IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:21-CV-37-FL

| | | |
|---|---|---|
| AARON THOMAS GRAHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| FAMILY DOLLAR STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court upon defendant's partial motion to dismiss (DE 9), pursuant to Federal Rule of Civil Procedure 12(b)(6). The issues raised have been briefed fully, and in this posture, are ripe for ruling. For the following reasons, defendant's motion is denied.

## STATEMENT OF THE CASE

Plaintiff commenced this action December 22, 2020, in Cumberland County Superior Court, asserting state law tort claims arising out of an injury plaintiff sustained when defendant's former employee allegedly slashed plaintiff's neck with a boxcutter, outside of defendant's store in Fayetteville, North Carolina. Plaintiff seeks compensatory and punitive damages, as well as fees and costs.

Defendant removed the case to this court January 26, 2021, on the basis of diversity jurisdiction. Shortly thereafter, defendant answered plaintiff's complaint and filed the instant partial motion to dismiss, seeking to dismiss plaintiff's claim asserted on the basis of respondeat superior. Plaintiff responded in opposition February 25, 2021, and defendant replied March 11, 2021.

In the meantime, the court entered initial order on planning and scheduling, followed by case management order, with a deadline for discovery to conclude by May 13, 2022, and dispositive motions by June 13, 2022.

## STATEMENT OF FACTS

The facts alleged in plaintiff's complaint may be summarized as follows. On November 29, 2020, plaintiff visited defendant's store in Fayetteville, North Carolina, ("the store") to shop for merchandise. (Compl. (DE 1-1) ¶ 3). Plaintiff alleges that he entered the store lawfully, while wearing a mask to protect other people from infection, and did not cause a disturbance. (Id. ¶¶ 4-7). Nevertheless, defendant's alleged former employee, Jerome Pigford ("Pigford"), instructed plaintiff to leave the store. (Id. ¶ 10).

As plaintiff exited the store, he protested and asked why he had to leave. (Id. ¶ 13). "[W]ords were exchanged", and Pigford followed plaintiff outside of the store. (Id. ¶¶ 14-15). With a boxcutter in hand, Pigford allegedly walked towards plaintiff and slashed plaintiff's throat. As a result of Pigford's alleged conduct, plaintiff's body has been grossly disfigured, causing him to suffer embarrassment and humiliation. (Id. ¶ 27).

## COURT'S DISCUSSION

A.   Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not

2

consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.  Analysis

Defendant seeks to dismiss plaintiff's claim asserted on the basis of respondeat superior, arguing that Pigford's alleged conduct occurred outside the scope of his employment.

An employer will be liable under a theory of respondeat superior "when the employee's act is [1] expressly authorized; [2] committed within the scope of the employee's employment and in furtherance of his master's business —when the act comes within his implied authority; or [3] when ratified by the principal." Medlin v. Bass, 327 N.C. 587, 592-93 (1990) (quotations omitted).[1] "To be within the scope of employment, an employee, at the time of the incident, must be acting in furtherance of the principal's business and for the purpose of accomplishing the duties of his employment." Id. at 593. "Where the employee's actions conceivably are within the scope of employment and in furtherance of the employer's business, the question is one for the jury." Id.

As an initial matter, the parties spill much ink on whether Pigford's alleged conduct constitutes negligence or an intentional tort.[2] However, the court need not reach this issue, because

---

[1] Plaintiff does not contend that Pigford's alleged conduct was expressly authorized or ratified, so the court does not analyze those factors.

[2] Plaintiff argues Pigford acted negligently, relying on his allegations that "Pigford[] was negligent and failed to exercise due care as a reasonable and prudent person in his conduct towards Plaintiff"; that Pigford "[n]egligently struck plaintiff with Defendant's boxcutter which was negligently opened and which exposed the sharp edge towards Plaintiff's throat"; and that Pigford "[n]egligently failed to control his temper." (Compl. (DE 1-1) ¶¶ 22-23). Of course, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice", Iqbal, 556 U.S. at 678, and the court is not required to accept "unwarranted inferences, unreasonable conclusions, or arguments", Nemet Chevrolet, 591 F.3d at 255, when evaluating a motion to dismiss.

even if Pigford's alleged conduct is presumed to be an intentional tort, this does not foreclose the possibility that such conduct occurred within the scope of his employment. Indeed, "North Carolina case law discloses numerous instances in which the issue of whether an intentional assault by an employee was within the scope of employment so as to impose vicarious liability on the employer was determined to be a jury question." Borneman v. United States, 213 F.3d 819, 828 (4th Cir. 2000) (citing Clemmons v. Life Ins. Co. of Ga., 274 N.C. 416 (1968) (collection agent for insurance company threatened plaintiff with pistol when she was unable to pay premium); Munick v. Durham, 181 N.C. 188 (1921) (city employee assaulted plaintiff when he paid portion of his water bill in pennies); Carawan v. Tate, 53 N.C. App. 161 (1981) (parking lot attendant drew gun on plaintiff after plaintiff refused to pay parking fee); Edwards v. Akion, 52 N.C. App. 688 (1981) (sanitation worker grabbed and hit plaintiff after dispute about the manner in which the worker collected plaintiff's refuse)).

Upon review of North Carolina case law addressing such intentional assaults, the United States Court of Appeals for the Fourth Circuit concluded that this issue turns on:

> whether the employee was "about his master's business or whether he stepped aside from his employment to commit a wrong prompted by a spirit of vindictiveness or to gratify his personal animosity or to carry out an independent purpose of his own,"
>
> whether the employee acted "as a means or for the purpose of performing the work he was employed to do" or whether he "was advancing a completely personal objective," or
>
> whether an employee's act "was a means or method of doing that which he was employed to do" or whether he "departed, however briefly, from his duties in order to accomplish a purpose of his own, which purpose was not incidental to the work he was employed to do."

Id. (citing Medlin, 327 N.C. at 593; Wegner v. Delly–Land Delicatessen, Inc., 270 N.C. 62, 66-67 (1967)). The Fourth Circuit further explained that "the inquiry is fact-bound and may involve consideration of such factors as the degree to which the physical confrontation [ ], if one occurred,

4

represented an escalation of a work-related dispute and the degree to which it was motivated by personal animosity." Id.

Here, plaintiff alleges that Pigford instructed plaintiff to leave the store. (Compl. (DE 1-1) ¶ 10). Plaintiff protested and inquired why he had to leave. (Id. ¶¶ 11-13). "[W]ords were exchanged" between plaintiff and Pigford, and Pigford allegedly followed plaintiff out of the store. (Id. ¶¶ 14-15). Once outside, Pigford allegedly walked toward plaintiff and slashed plaintiff's throat with a boxcutter. (Id. ¶¶ 16-19). These allegations permit the reasonable inference that the alleged physical confrontation between plaintiff and Pigford represented an escalation of a work-related dispute. As a result, the court cannot conclude, as a matter of law, that Pigford's alleged actions occurred outside the scope of his employment.

Defendant's reliance on Wegner misses the mark at this juncture, where Wegner was not decided in the context of a motion to dismiss. In that case, testimony revealed that personal animosity, rather than work-related concerns, fueled the employee's attack. Wegner, 270 N.C. at 68. Here, in contrast, there are no allegations suggesting that Pigford was motivated by personal animosity. Defendant, of course, may present evidence or testimony at a later juncture suggesting that the attack was personal in nature. For present purposes, however, the court does not rest disposition of the instant motion on defendant's arguments premised upon defendant's view of the facts.

Defendant also argues that Pigford's alleged actions were outside the scope of his employment because "cutting Plaintiff with the boxcutter was contrary to [defendant's] interest." (Mem. (DE 18) at 6). This argument is unpersuasive. Arguably, all torts committed by employees are adverse to their employers' interests. If such adversity was sufficient to shield employers from liability, respondeat superior would be a toothless doctrine.

5

For all these reasons, defendant's motion to dismiss is denied.

## CONCLUSION

Based on the foregoing, defendant's partial motion to dismiss (DE 9) is DENIED.

SO ORDERED, this the 14th day of July, 2021.

                                      LOUISE W. FLANAGAN
                                      United States District Judge